Insurance Company, in failing to comply with the requirements of the Motor Vehicle Financial Responsibility Law in issuing commercial policies in Pennsylvania. It's our position that the trial court erred in ratifying the actions of Nationwide in this case. Therefore, we respectfully request that the decision of the trial court be reversed and the matter be remanded for trial on the merits. Okay, let me interrupt you long enough, Mr. Haggerty, to note that it appears that there was a jurisdictional... There was, Your Honor. You want to put on the record how that's been addressed? Yes, Your Honor. In the original complaint was not pledged sufficiently to set forth the residency and citizenship for purposes of diversity jurisdiction. That issue was then raised by the court in a letter to the parties, and in that letter we addressed the issue and we respectfully requested the opportunity to correct that procedural deficiency. Well, right. I understood that both parties pursuant to 28 U.S.C. Section 1653 had agreed that the complaint should be deemed amended to allege citizenship properly to affect diversity jurisdiction. Am I right about that? Yes. Okay, and I'm just going to glance over for purposes of making the record at Mr. Vance. Am I right about that, sir? You are, Your Honor. All right, then we'll just say on the record that's done and that is considered to be taken care of and we've got jurisdiction and we're moving forward. Thank you, Your Honor. Okay, thanks. Counsel, you've also moved for certification, but you haven't cited, just despite your assertion that this is a provision that is uniform throughout these types of policies and therefore would be a widespread issue, any case that raises this issue to be... This issue has not previously been raised under the financial responsibility law in the courts to have begun to address it and without any conflict in that regard, is this really a good candidate for certification? Well, Your Honor, the reason why we raise that because it is an issue of first impression. It is an issue that affects potentially hundreds, if not thousands, of commercial auto policies in Pennsylvania and is purely an issue of state law. So for that reason, we did request that it be certified, but there is no other law on this issue. Well, are there... When you say there's no law on this, in the... Isn't there the Blood v. Old Guard insurance case where there's a citation with approval to our court's previous decision in the... I'm not sure I'm saying this right... Resigui? Resigui, yes. Yeah, case. Well, those cases, Your Honor, are really the propriety of elections or rejections, which is different than this case. In this matter, in those cases, the courts are looking at was there a proper rejection of coverage, was there a proper election of lower limits of coverage? Right, but in the course of making those decisions, they speak to the meaning of the Pennsylvania statute, which is directly at issue here, don't they? Yes. Okay, and in fact, in the Resigui case, we said Section 1731 is a simple statement whose plain meaning is apparent from its language. It mandates that an insurance company cannot issue a policy in the Commonwealth of Pennsylvania unless it provides UIM coverage equal to the bodily injury liability coverage, except as provided in Section 1734. That seems a pretty straightforward statement, doesn't it? It's very straightforward. I thought it was one you liked. It's very straightforward, Your Honor, and it is one I like. Okay, then I am wondering why you want us to send this someplace else? Well, perhaps it's better to stay here, Your Honor. Okay. You want to sit down now, right? Yeah, okay, good. Counsel, can you help us understand why we should distinguish this from other exclusions? And I take it you're not suggesting at this point that cases like this, so is there something particular about ownership that can't be excluded? No, Your Honor, those cases involve particular exclusions to coverage. Here we're talking about, as Judge Jordan points out, the clear statement that an insurer may not issue a policy in Pennsylvania that provides liability coverage for a motor vehicle that does not also provide uninsured and underinsured motorist coverage, which is coextensive, unless there is a rejection in accordance with the statute or an election of lower limits in accordance with the statute. Those cases that you refer to are, Burstein, et cetera, are exclusion cases, a regular use exclusion. The case, the exclusion raised in the letter from the court, Gallagher, which was a household exclusion. Those are exclusions to coverage. Here we have a situation where this is not an exclusion of coverage. This is a failure to comply with the statutory mandate. Well, that's putting a label on it that may be helpful for your client, but in effect, it achieves the same result, right? There's liability that has been provided under the policy and de facto, whether it's done by the symbol here in the text of the policy or is done by exclusion, there is a subset of persons and circumstances that are carved out of the required provision. I hadn't thought of the covered auto symbol, use the covered auto symbol as an exclusion, but certainly, Your Honor, it can be viewed as that. And if it is viewed as an exclusion of coverage, then it fails and it is void and unenforceable because it is repugnant to the provisions of the financial responsibility law. Well, why is it repugnant if the category that it creates has UIM covered? So when you think about the law requires UIM and auto liability coverage to be coextensive, right? And with regard to cars owned by Phoenixville, it is coextensive. Yes, it is, Your Honor. Right. So if that's so, then how do we, why isn't the actions of Nationwide just creating a category where it is coextensive and this is merely a reduction? The financial responsibility law does not impose that requirement of coextensive coverage. It's not premised upon ownership, Your Honor. The section 1731 says, no policy shall be issued in the Commonwealth of Pennsylvania unless uninsured and uninsured motorist coverage is provided, is offered, et cetera. So the onus is upon the insurer. Ownership is a red herring that Nationwide is trying to raise and they're trying to say, we shouldn't have to be required to pay for coverage for vehicles we don't own. But that's exactly what they're doing. They're providing liability coverage for any auto. What under the law says that they should provide coverage for vehicles they don't own? There is nothing in the law that says that that's what they did. That's what commercial policies commonly do. Commercial policies are written in such a way that a personal auto policy can identify all the vehicles that are owned. My question is, what in the law mandates your interpretation? They have an interpretation, you have an interpretation. Their argument, presumably, is that there is coextensive coverage. And my question to you is, what in the law mandates your interpretation rather than theirs? Section 1731 of the financial responsibility law, Your Honor, says no policy may be issued unless uninsured and uninsured motorist coverage is provided for the vehicle. So they insured, they issued a policy and they insure for liability coverage any auto, which is common under these policies because that means any person driving, any employee driving a car in the course and scope gets liability coverage. And the financial responsibility law says if you insure a vehicle and you provide liability coverage, you must also provide UM and UIM coverage unless there is a rejection. The law says that. There is no requirement of ownership. The requirement is if you insure it for liability, you must insure it for uninsured and underinsured. Commercial policies commonly insure vehicles that are not owned. They're hired autos endorsements, they're borrowed autos endorsements. That's common in these situations. So then my question to you is, is that a de facto waiver or is that a permissible reduction? I presume you'd say it's a, you might not agree with that. It's neither. It's neither, Your Honor. It's an impermissible waiver. They're trying to use the covered auto symbol to effectuate a waiver of coverage for a certain class of vehicles. I'm not saying they can't do it. They can do it if they had a waiver that says, a waiver that comports with the financial responsibility law says here's a waiver of coverage. And then if they endorse the policy and the policy is endorsed and says, however, we do provide coverage for such and such. Do you agree that they can do it by exclusion? And if not, why is this carve out different from the regularly used non-owned car exclusion? Because the regularly used exclusion is not violative of the financial responsibility law. If this is viewed as an exclusion, which we say it's not an exclusion, it's really a waiver of coverage. If this is viewed as an exclusion, then it must be viewed in terms of the mandate of the financial responsibility law. The financial responsibility law says if you provide liability coverage, you must also provide underinsured motorist coverage unless you have a rejection or an election of lower limits. Why wouldn't that be true of the regularly used non-owned car exclusion? Or is it, is your, I thought you said earlier that you agreed that Bernstein and Williams remain good law. If they do and that exclusion is permissible, if parties can privately negotiate a carve out just within the terms of the policy, why can't they do it here as a default? Because your honor, it's really not an exclusion. It's not an exclusion. It's a waiver of coverage. It's not saying that we are excluding a certain, a certain action. We're, we're not, we're excluding if you're driving this vehicle and you don't have permission. What they're saying is we are not providing any coverage. The same way you can't say that an election of zero is a rejection. That's not true. An exclusion of all coverage is not an exclusion. It's a rejection. This is not an exclusion, your honor. So tell me then, if you have the, the use of the auto symbol too, that gives Phoenixville notice as to what the extent of coverage is. And then Phoenixville signs the agreement. Why isn't that the equivalent of a writing such that the reduction to UIM for a certain category of cars is permissible? Phoenixville agrees. The Pennsylvania courts have said it effective waivers can't be viewed as effective elections. There are cases that, that specifically say where someone said they had an election and they said, we want, we don't want to provide any coverage. We just want to provide the minimum statutory requirement. And the court said, that's invalid rejection. And you tried to reject and that's no good. And we're not going to say that's a valid election. In the instance that you're citing to us right there, is there an agreement by the insured or is that an instance when the insured refused to sign? Because my question to you is what, what, how should we look at the fact that Phoenixville has notice of the, of the 02 symbol and then elects to sign on? It's, it, it knows the extent of the coverage and essentially it knows that there's a reduction in coverage and it's agreed to that. That makes common sense, your honor, but that's not the financial responsibility law. That's not what the Pennsylvania legislature issued when they, when they enacted the financial responsibility law. Financial responsibility law says in order to waive coverage, you have to have this rejection. Intent doesn't matter. You have to have this form. It has to be a knowing and voluntary waiver. Bottom line is your position is there, you can't affect this change through the policy statement consistent with, you can't affect this by language in the policy. It has to be a mandatory rules for waiver or. And if, if they had a waiver, your honor, and they had policy language as was done in the Raric case, which was a district court decision where they were excluding a certain number of people, they had a waiver and then they had an endorsement saying, however, we were providing coverage to these people, then that would be acceptable. Okay. Here, they don't have the waiver. We've got your argument. Great. We'll have you back on. Thank you. Mr. Haggerty. Okay. Mr. Vance. Good morning, your honors. Bradley Vance. I represent Nationwide Mutual Insurance Company. I've got a bit of a raspy voice. Your honors will have to forgive me. I put my daughter on a plane to study to Italy this morning. She left me with her cold. Good for your daughter, leaving that and that's got the business auto coverage form from the policy. And it looks like the statement is as it, as it describes what is and isn't covered that symbol one means any auto. Yes, your honor. Okay. Was, was any auto what was being covered here for Phoenixville on the liability side? Any auto being used by an employee in furtherance of Phoenixville's business. Okay. Is covered under the policy for liability coverage. Okay. If that's the case, then we all know what the central argument here is. If you say you're covering any auto and there wasn't off on some frolic and detour. What, what is the basis for saying, well, 1731 does not require us to, to cover at least the same level as liability insurance, the underinsured or uninsured motorist coverage. Two primary reasons, your honor. First, Mr. to an area in which it's never been. He asked that you find that in a situation where an employer has added non-mandated liability coverage, which is what happened here, that 1731 attached to it, a commensurate obligation that nationwide offer or provide underinsured motorist coverage. What, when, when you say it's never been there before, it may never have been litigated before, but the assertion is being made to us that this is not an uncommon kind of policy. Is that inaccurate? It is an accurate statement that this is not an uncommon type of policy. Okay. Then why don't you speak to us about what we have said 1731 means. You heard me quote the language from a opinion. It says there's nothing hard about this. It means what it says. If, if that is the controlling principle of law, what's your exit ramp? My statement, my statement, your honor, that Mr. Slutsky asked the court to take 1731 to an area it's never been means this. The liability coverage that was selected was additional liability coverage. So the policy, 1731 speaks to policy issued by an insurer. The policy of automobile insurance on the vehicle, which Mr. Slutsky was driving at the time of the accident was simply not issued by Nationwide. But, but Nationwide did issue a policy to Phoenixville and it did say we're covering any auto, any auto. For liability. Yeah. And whether it's covered by somebody else or not is irrelevant. We're covering any auto that an employee is driving in the course of employment. And you've acknowledged that he was driving in the course of employment and you've acknowledged that that's what the liability coverage by Nationwide means. Indeed. So I'm trying to follow your logic. If 1731 says what we said it means, and we said it means if you've covered something for liability, you will cover it for UMUIM coverage at the same level, absent an appropriate statement consistent with 1734. Rejection. Rejection. Then you're done. I mean, I'm just, I'm, I'm having a challenge with your logic. If, if you acknowledge as indeed you must, that you covered it for any auto and that was the liability coverage, either we were wrong in Resigwe or there's something we're not seeing or I'm not seeing that gives you an out. What's your out? The Resigwe facts are not, they are inapposite to the facts presently before the court. Nationwide complied with 1731. It issued a policy of automobile insurance to Phoenixville covering the two vehicles which Phoenixville owns. On that policy issued, it provided both liability coverage and underinsured motorist coverage. The rabbit just went in the hat. The rabbit just went in the hat when you said it covered those. Yeah, it did cover the owned vehicles, but it also covered any auto. What is, what are the words any auto mean, if not any auto that's being driven in the course of employment, whether it's owned or not? Any auto for liability purpose. We don't have an exclusion or a rejection here, your honor. We have inclusion of non-mandated coverage by way of a policy definition. Where in the plain language of 1731 does it say that the statute applies only where there's mandated coverage? 1786. I disagree with Mr. Haggerty's argument that the motor vehicle responsibility and through it 1731 don't address ownership. 1786 F is the statutorily prescribed statement of required financial responsibility in the Commonwealth of Pennsylvania. It says owners must insure vehicles which they own. Well, that's what they must do, but 1731 by its term says no motor vehicle liability insurance policy shall be delivered or issued unless uninsured motorist insurance is also provided in amounts set forth in 1734. It doesn't limit it or cross-reference 1786. It doesn't limit it to ones that are owned or even that's where there's mandated liability coverage. Its terms include both mandated and non-mandated, no motor vehicle liability insurance policy. There is not a single reported case in the Commonwealth of Pennsylvania or Third Circuit appellate decision which has held that when an employer elects to obtain liability coverage which is not required by the statute, the liability coverage on any vehicle is not statutorily mandated. But you've just been asked, where in the statute does it say, and this only covers liability, this only means to apply to liability coverage that's required? I'm speaking, Your Honor, respectfully to interpretation of the statute. There is not a single case that has held that under these facts, the purchase of additional non-mandated liability coverage is tantamount to issuing an insurance policy. When you say it's tantamount to, it is the issuance of an insurance policy. You issued the policy. We issued the policy on the two employer-owned vehicles. No, you issued a policy that covered any auto. That's why I started with that very language because it's in the coverage. It's in the form that is disputable, isn't it? It's indisputable as to liability coverage. That is correct. Okay. Question. You mentioned 1786F. It's not in your brief because I just read your brief again. So I'm wondering, where are you, where does this argument come from? I think the difficulty we're having is with the notion of coextensiveness, right? So the liability auto UIM supposed to be coextensive. It's clearly not. That's what the statute calls for. So I'm wondering two questions. How are we supposed to know about 1786F? But more important, on the issue of coextensiveness, what is it in the statute that allows you to draw the distinction that you've drawn here between the coverage you're providing under auto liability on the one hand and UIM on the other? So, Your Honor, we did argue extensively that the act does not require that UIM coverage be on vehicles. And that speaks directly to 1786, pronouncement that in the Commonwealth, you need only provide financial responsibility, mandated financial responsibility to vehicles which you own. So although we did not specifically cite to section 1786, we did make the argument extensively in the brief. How are we to define that 1786 is the linchpin of your argument? 1786 isn't the linchpin of the argument, Your Honor. Okay. The linchpin of the argument is, again, the motor vehicle financial responsibility law has never been extended to employees occupying non-employer-owned vehicles for UIM. There is no statutory definition of insured for commercial auto policies. So Mr. Slutsky does not meet that definition. Here's the question. What is the statutory basis for the distinction that you have drawn between what this statute requires you to in which you can say, yes, we can draw the distinction between UIM on the one hand and auto liability on the other? If I understand Your Honor's question correctly, I would answer it by saying this. As respects, the coverages required by the statute, the UIM provided coverage was coextensive with the liability coverage. You insert the word required again. Show me in 1731A where the word required or anything like it shows up. I can only, it doesn't, Your Honor. Okay. Well, then the text of the statute doesn't include it. Why would we read it into it? Because every appellate decision interpreting and implying 1731 has addressed only one set of facts that aren't present before the court. And if every case that has gone before didn't have this factual wrinkle in it, what difference does that make? We're looking at the statute. What in the statute or anything else that you've put before us in your brief would tell us to read into the statute a limitation which by its terms is not there. Policies are only required to be issued to cover required financial responsibility. This policy issued in relation to the Well, the problem, your problem is the statute doesn't say that on its face. And 1731 sweeps pretty broadly in its plain language. And we've also interpreted it that way, right, in Resighi. Your Honor, you're correct. 1731 does not distinguish in the terms of the statutory provision between the liability coverage you are statutorily mandated to obtain and additional liability coverage that there is no requirement in the statute that you purchase. Which is what's at issue here. Are there not other cases like this? Because other carriers or in other policies folks are complying with the statute and where they're choosing not to provide uninsured motorist coverage coextensive with the liability coverage, they're obtaining the required rejection form. I think I would answer this question this way, your Honor. I can't, I don't have a specific answer as to why this issue has never been litigated before other than to say, I believe the clear mandate of 1731 does not reach the additional liability coverage procured by Phoenixville. I suspect that there are, as Mr. Haggerty stated, hundreds if not thousands of policies out there, commercial water policies written exactly the way the nationwide policy is written. Well, similar issues have come up before. The Yoakum case is one of them and nationwide was also by way of intervention was also part of that case. Correct. And there it appears that nationwide took exactly the opposite position. That 1731 does not provide a process whereby an insurer can purchase coverage for a limited class of individuals and reject it for others. 1734 does not provide a procedure whereby absent a valid rejection, an insurer can opt for coverage for a limited class of individuals only. Any rejection form as to a class of individuals must comply with the requirements of 1731. Isn't that 180 from the position you're taking with us today? Respectfully not, your Honor. Yoakum is significant for the facts that are 180 distinguishable from the facts in the present case. In Yoakum, the employer was, the employee was actually occupying one of the employer-owned vehicles. As such, the employee was a statutorily defined insured for underinsured motorist coverage and he was also an insured under the policy until the carrier tried to carve him out. When they tried to carve him out, they created a two-tiered system of coverage, which we do not have here. No person under this policy is insured for UIM unless occupying an employer-owned vehicle in the Slupsky nationwide situation. The distinction is they're covered for liability insurance and they're not covered for unemployed, for uninsured motorist coverage. Well, the distinction with Yoakum is no one, officer, owner, director, or employee in the Slupsky situation is covered for UIM unless occupying one of the two employer-owned vehicles. How is that consistent with the tact that the Pennsylvania Supreme Court has taken in cases like Gallagher and Sales and Colbert? I mean, hasn't it, hasn't it repeatedly said that de facto waivers or exclusions or attempts within, within an insurance policy to narrow the definition of insured are rejected as a matter of the text of the, of the, of the statute as well as Pennsylvania public policy? Every one of those cases, your honor, that you just mentioned deals with statutorily mandated coverage. This case does not. So you are required to provide statutorily mandated liability on the vehicles that you own. And in that situation, the carrier must also provide or offer UIM. Phoenixville was not required to provide the liability coverage for the vehicle which Mr. Slupsky was occupying. I respectfully submit those cases are in app, opposite and agree with Mr. Haggerty that Gallagher in particular has no particular application to the issue before the court. Your adversary seemed to change his view on certification when Judge Jordan brought to attention a particular case. I wonder if your view on certification remains the same or have you changed your view? Your honor, nationwide view on certification remains as stated in our letter brief requested by the court. We do not think this case is appropriate for certification of the Pennsylvania Supreme Court. Okay. Thanks very much, Mr. Vance. Appreciate your argument. Thank you, your honor. Unless the court has any questions, I don't believe there's anything more I need to add. I just would respectfully request that the decision of the trial court be reversed and the matter be remanded for further proceedings. Okay. Thank you, Mr. Haggerty. We've got the matter under advisement.